# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHER DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **PAYAL KAPOOR,** | |
| Plaintiff, | |
| | Case No. 15 C 7427 |
| v. | |
| | Judge Harry D. Leinenweber |
| **CAROLYN COLVIN,** Commissioner Of Social Security Administration, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Payal Kapoor ("Plaintiff") filed this Complaint challenging the determination of the U.S. Social Security Administration (the "Government") denying her disability benefits. Plaintiff and the Government have filed Cross-Motions for Summary Judgment [ECF Nos. 6 and 17]. For the reasons stated herein, the Court grants Plaintiff's Motion in part [ECF No. 6], and denies the Government's Motion [ECF No. 17], reversing the judgment of the administrative law judge and remanding the matter for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Payal Kapoor ("Payal") has a history of mental illness and suffers from bipolar disorder or schizoaffective disorder, bipolar type (it is unclear which). (*See,* Administrative Record

(hereinafter, "AR") at 64.) There is no question that she currently suffers from a mental disability. This case turns on questions regarding her past. An Administrative Law Judge ("ALJ") denied Payal an additional disability entitlement known as disabled Child's Insurance Benefits ("CIB"). The availability of CIB is governed by statute at 42 U.S.C. § 402(d)(1) and by federal regulation at 20 C.F.R. 404.350(a)(5). Whether a child is entitled to CIB depends primarily on whether she had a "disability" that began prior to reaching the age of 22. A disability means "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

So, in order to be granted CIB, Payal needed evidence that she suffered from a mental impairment prior to turning 22, on December 28, 1993. This case is complicated by the fact that, during this time period, Payal's treatment took place entirely in India, and the medical records she was able to obtain are substandard. The records nevertheless paint a picture of a potentially debilitating mental illness.

At some point in 1988, a doctor in India diagnosed Payal with "psychosis." (*See,* AR at 252.) Over the course of several months that year, she was prescribed a bewildering array of

different medications.  (*See,* AR at 254-59.)  Records indicate that doctors in India continued to modify her drug regimen for several years, including during the years 1989, 1990, and 1993-95.  (*See,* AR at 260-67.)  The number of prescriptions written by her doctors during this time totals at least 55, although some of the same drugs appear multiple times, only in varying quantities.

At a hearing before the ALJ, Payal's mother ("Ms. Kapoor") testified about her daughter's condition while the family lived in India, describing it as "totally unimaginable" and "horrific."  (*See,* AR at 66-67.)  She testified that her daughter was highly unpredictable; that her behavior in public was embarrassing; and that the family feared she might jump out a window of their 8th floor apartment.  (*See, id.*)  Ms. Kapoor finally sought treatment when Payal began disrobing and obliviously wandering around the apartment.  (*See,* AR at 67-71.)

Ms. Kapoor spoke about Payal's series of treating physicians and about Payal's changing medications that began when she was 16 and continued for years.  (*See,* AR at 68.)  Although Ms. Kapoor described her daughter as completely disconnected from reality at times, she also indicated that Payal completed the rough equivalent in India of a bachelor's degree and a master's degree.  (*See,* AR 68-69, 71-72.)  Ms. Kapoor stressed, however, that the degrees were possible only

with the help of Payal's "coach" (presumably a tutor) as well as with the support of the entire family. (*See,* AR at 68-69). The master's degree was completed entirely through correspondence school, because Payal had difficulty interacting with other students; according to Ms. Kapoor, Payal "could not take . . . something as simple as how are you doing today?" (*See,* AR at 70.) Ms. Kapoor described her daughter's academic achievements as a "miracle." (*See,* AR at 69.)

Payal moved to the United States with her family permanently in April of 1997, and she immediately began to receive medical treatment in Columbus, Ohio from Dr. Christopher Blank ("Dr. Blank"). (*See,* AR at 63-65.) Ms. Kapoor stated that Payal's illness has improved over time, and that she is currently still on two medications – lithium and tegretol – that were originally prescribed back in India. (*See,* AR at 66, 72.)

After the Social Security Administration (the "SSA") initially denied Payal's application for CIB, she appealed (through her mother) to the SSA's Office of Disability Adjudication and Review. The office assigned an ALJ to the matter, and the ALJ held a hearing regarding Payal's claim on May 16, 2013. An impartial medical expert ("Dr. O'Brien"), an impartial vocational expert, and Ms. Kapoor all testified. They were questioned by the ALJ and by Payal's attorney. The ALJ confirmed the denial of CIB, finding that Payal failed to

establish the existence of a medically determinable mental impairment or a severe mental impairment prior to age 22 that would entitle her to CIB payments. Payal now seeks review of the ALJ's decision in this Court. *See,* 42 U.S.C. § 405(g) (providing jurisdiction).

## II. ANALYSIS

This Court will uphold the ALJ's decision if it correctly applied the law and is supported by substantial evidence. *See, Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). The ALJ is not required to discuss every piece of evidence in the record before denying benefits, but he must adequately support his conclusions. *Id*. In addition, "a treating physician's opinion that is consistent with the record is generally entitled to controlling weight." *Id*. (internal quotations omitted) (citing 20 C.F.R. § 404.1527(d)(2)).

In denying Payal's claim, the ALJ made several errors. First and most important, he relied on the statements of medical expert Dr. O'Brien, who provided conclusory and uninformed testimony at the May 16 hearing. In questioning Dr. O'Brien, the ALJ failed to elicit even minimally useful information that would support his decision. Although the ALJ states that he gave the opinion of Dr. Blank – Kapoor's treating psychiatrist – great weight, Dr. Blank's opinion contradicted points made by Dr. O'Brien. The ALJ did not indicate how, if at all, he

reconciled the contradictions. Finally, the ALJ wrongly discounted the testimony of Ms. Kapoor regarding Payal's condition while in India. Taken together, these errors led to a decision that is not supported by substantial evidence.

### A. Medical Evidence

Dr. Blank, a psychiatrist, treated Payal when the family first moved to the U.S. for a period of three to four years. With access to at least some of Payal's medical records from India, Dr. Blank wrote a letter dated June 15, 2013, in which he discussed various aspects of Payal's illness and her course of treatment. The letter included a list of every medication she was prescribed between 1988 and 1995, including identification of the generic version of each drug and brief descriptions of their indications. Dr. Blank recalled diagnosing Payal with schizoaffective disorder, bipolar type. He concluded his letter as follows: "[E]very medication listed above [compiled from the Indian prescriptions] can be used and is used to treat one or more of the symptoms of psychosis, mania, and/or depression – exactly the symptoms I know Payal Kapoor to have. I would say that the medications prescribed to her while she lived in India are EXACTLY the kinds of medications she has been treated with here in the United States." (*See,* AR at 356-58.)

Contrast this with the testimony of forensic psychologist Dr. O'Brien, who stated at the May 16 hearing that she did not

recognize any of the medications in the physicians' notes from India. The ALJ asked her if there was sufficient information for her to form an opinion about Payal's disability prior to December 28, 1993. She answered, "No . . . the [documents from India] are very brief documents from treatment she received in India. And they are not documents that are interprable *[sic]* in American psychology. So I can't tell you anything about them." (*See,* AR at 59.)

It is unclear what Dr. O'Brien meant when she stated that the documents weren't interpretable in American psychology. "Psychosis" may not be a medically recognized mental illness in the United States, but it is not a foreign medical term and indeed may be a medically-recognized symptom of Payal's condition. *See, Mayo Clinic,* http://www.mayoclinic.org/diseases-conditions/bipolar-disorder/basics/symptoms/con-20027544, (last visited October 24, 2016) (describing a break from reality, or "psychosis," as one of the diagnostic criteria for bipolar I disorder). More to the point, though: Dr. O'Brien failed to identify even one medication prescribed to Payal in India, while Dr. Blank was able to reveal that 10 of those medications are marketed in the United States, two of them under the same brand name as in India. One of the medications – tegretol – is a medication "used to treat mania in bipolar disorder," according to Dr. Blank, and it is one of the prescriptions that Mrs.

Kapoor testified Payal still took. The ALJ's decision did not address these critical weaknesses in Dr. O'Brien's testimony.

To be fair to Dr. O'Brien and the ALJ, the hearing took place in May of 2013, a month before the parties received Dr. Blank's letter. Still, it is odd that Dr. O'Brien essentially threw up her hands in defeat when asked to give an opinion on the history of Payal's mental health, attributing the difficulty to cultural differences. (*See,* AR at 60, 62.) Dr. O'Brien may not have had the benefit of Dr. Blank's letter, but she was privy to Mrs. Kapoor's testimony about Payal and the tegretol. (*See,* AR at 76.) Dr. O'Brien nevertheless repeatedly said she had no idea what the medications were, and the ALJ credited her testimony despite her ignorance.

Only two of Payal's treating physicians in the United States provided evidence: Dr. Blank and a psychologist, Dr. Gregg. Acknowledging that the opinions of treating physicians provide the greatest evidentiary weight, the ALJ found it significant that neither Dr. Blank nor Dr. Gregg were able to "extrapolate" Payal's condition before she attained the age of 22. But there is no indication that either doctor was asked to extrapolate in this manner. Dr. Gregg's 2010 evaluation primarily concerns contemporary evidence of Payal's disability. (*See,* AR at 328-32.) And while Dr. Blank does discuss Payal's past treatment, he does not opine on whether he believes she

suffered from a severe mental illness prior to age 22. (*See,* AR at 356-58.) If the question of Payal's past condition was never put squarely to her doctors, Payal should not be punished for their silence on the issue.

The only medical experts who were asked about Payal's condition prior to age 22 are Dr. O'Brien, who provided no useful testimony, and two other doctors who worked for the SSA, Doctors Voss and Schneider. These doctors took part in the initial review and subsequent denial of Payal's claim for CIB. They used barebones, checklist-type forms indicating that they believed there was insufficient information in Payal's file to determine whether she was severely disabled prior to 22. (*See,* AR at 339-51, 353-55.) The documents do not provide detailed, reasoned opinions; Dr. Schneider even refers to Payal twice as a male in his cursory four-sentence analysis. (*See,* AR at 355.) As a result, these evaluations were entitled to very little evidentiary weight.

The ALJ relied on one case – *Lieberman v. Califano* – to support his interpretation of the medical evidence. *Lieberman v. Califano,* 592 F.2d 986 (7th Cir. 1979). *Lieberman* involved a claimant whose primary medical evidence in support of her disability was a psychiatric examination performed at least 40 years after the onset of symptoms. *Id*. at 989-92. The record in Payal's case is not so thin; she has produced not only ample

evidence of the current severity of her mental illness, but also some documentation of the existence of a similar (if not identical) illness suffered in the past. Moreover, despite *Lieberman,* contemporary medical reports that do not reach into a patient's past nevertheless may serve as evidence of a disability in a prior period, if the reports suggest, for example, that the disability is long-standing. *See, Ray v. Bowen,* 843 F.2d 998, 1005 (7th Cir. 1988) (citing *Sears v. Bowen,* 840 F.2d 394 (7th Cir. 1988)).

*Lieberman* is distinguishable on one other important ground: the claimant in that case suffered from a "vaguely defined mental illness" that was not readily diagnosable at the time. *Ray,* 843 F.2d at 1005 (distinguishing alcoholism from the disability rejected in *Lieberman*). Due in part to the indeterminacy of the illness, the court in *Lieberman* believed it unwise to attempt to trace the illness back 40 years and to guess about the claimant's prior condition. By contrast, Payal suffers from a relatively well-established mental illness, and it is worth noting that the Seventh Circuit has recognized both bipolar disorder and schizophrenia as legitimate mental disabilities that may be severe in nature. *See, e.g., Meuser v. Colvin,* No. 16-1052 (7th Cir. October 3, 2016) (discussing schizophrenia); *Scott v. Astrue,* 647 F.3d 734 (7th Cir. 2011)

(discussing bipolar). For these reasons, the ALJ's exclusive reliance on *Lieberman* was misplaced.

**B. Ms. Kapoor's Testimony**

Ms. Kapoor, Payal's mother, testified at the May 16, 2013 hearing. She testified, in detail, about the severity of Payal's illness while the family resided in India, the effect on Payal's life, and the continuation (and improvement) of symptoms after the family relocated to the United States. The ALJ discredited much of her testimony for improper reasons.

First, the ALJ believed that Payal's achievement of a bachelor's and master's degree while she was in India negated much of what Ms. Kapoor said about her daughter's day-to-day difficulties. It makes no sense to hold Payal's accomplishments against her in this regard. Ms. Kapoor testified that the accomplishments were only possible with the help of a tutor, with help from the entire family, and through correspondence classes. She described it as a miracle. Ms. Kapoor also has described Payal as a "good student" when speaking to physicians on at least two occasions. (*See,* AR at 291, 329.) In his decision, the ALJ implied that such a description was at odds with Ms. Kapoor's other testimony describing her daughter's hardships; the ALJ possibly used the comment as a reason to discredit her. (*See,* AR at 44, 46-47.) If so, that was a

blatant mistake. It would be unfair to discount Ms. Kapoor's credibility simply because she is proud of her daughter.

Relatedly, the ALJ believed that Payal's ability to find employment on four separate occasions cut against Ms. Kapoor's testimony about the severity of her daughter's condition – despite the fact that Payal failed to hold any job for more than a few days. (*See,* AR at 247.) As with Payal's attempt to educate herself, it makes no sense to punish her for attempting (and failing) to find long-term work; this is especially true for a disability like bipolar disorder, where the severity of the symptoms may ebb and flow. The Seventh Circuit has cautioned that people suffering from bipolar disorder may "experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated.'" *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011); *see also, Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008). The ALJ may not cherry-pick evidence from a claimant's "good day" to support denial of benefits. *See, Bauer,* 532 F.3d at 609 ("Suppose that half the time [claimant] is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). The ALJ erred to the extent he refused to credit Ms. Kapoor's testimony for these reasons. (*See,* AR at 47.)

### III. **CONCLUSION**

The errors described above demonstrate that there was no "accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002). The Court does not conclude that Payal is definitely entitled to CIB; instead, the Court emphasizes that the ALJ's decision was not supported by substantial evidence, and it remands the matter for further proceedings consistent with this opinion. The Court thus grants Plaintiff Payal Kapoor's Motion for Summary Judgment [ECF No. 6] in part, and denies Defendant Carolyn Colvin's Motion for Summary Judgment [ECF No. 17]. Payal's Motion is denied to the extent it seeks fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; for an award of such fees to follow, Payal must prevail in the underlying proceedings, a matter to be considered on remand. Her request for fees is premature. *See, Singleton v. Bowen,* 841 F.2d 710, 711-12 (7th Cir. 1988) (holding that a remand does not determine a "prevailing party" and collecting cases).

**IT IS SO ORDERED.**

                                             Harry D. Leinenweber, Judge
                                             United States District Court

Dated: November 2, 2016